IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

CLARKSBURG DIVISION

| | |
|---|---|
| KIM S. MILLER, individually and as Personal Representative of the Estate of NICOLE FARIS MILLER, <br><br> Plaintiff, <br><br> vs. <br><br> WALTHER PRODUCTIONS, INC., d/b/a ALL GOOD FESTIVAL, a Maryland corporation; ALL GOOD FESTIVAL, INC., a Maryland corporation; TIM WALTHER; JUNIPA CONTENTO; MARVIN HUGGINS; MARVIN'S MOUNTAINTOP, LLC, a West Virginia limited liability company; M & M PARKING, INC., a/k/a M & M PARKING SERVICES, INC., a/k/a M & M EVENT SERVICES, LLC, a Pennsylvania corporation; EVENT STAFFING, INC., a Virginia corporation; NATIONAL EVENT SERVICES, INC., a New Hampshire corporation; AXIS SECURITY, INC., a Tennessee corporation; CLAY HARLIN LEWIN; JAMES TOBIN; and JIM TOBIN PRODUCTIONS, <br><br> Defendants. | ) ) ) ) ) ) ) ) CASE NO. 1:11-cv-00151-IMK ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

<u>AMENDED COMPLAINT</u>

Plaintiff Kim S. Miller, individually and as Personal

Representative of the Estate of Nicole Faris Miller, hereby

alleges and complains of Defendants Walther Productions, Inc.

d/b/a All Good Festival, All Good Festival, Inc., Tim Walther,

Junipa Contento, James Tobin, Jim Tobin Productions, Marvin

EXHIBIT A

Huggins, individually and d/b/a Marvin's Mountaintop, M & M Parking, Inc., a/k/a M & M Parking Services, Inc., a/k/a M & M Event Services, LLC, Event Staffing Services, Inc., National Event Services, Inc., Axis Security, Inc., and Clay Harlin Lewin:

## PARTIES

1.    Plaintiff Kim S. Miller ("Kim") is a citizen and resident of the State of South Carolina.  Kim is the surviving father of Nicole Faris Miller ("Nicole") and brings this case on his own behalf and as Personal Representative of the Estate of Nicole Faris Miller, deceased, pursuant to West Virginia Code § 55-7-5, *et seq*.  Kim was duly appointed as the Personal Representative of the Estate of Nicole Faris Miller in Charleston County, State of South Carolina, where Nicole was a citizen and resided.  Kim has legal authority to bring this wrongful death action on behalf of Nicole's beneficiaries under both South Carolina law and West Virginia law.

2.    Defendant Walther Productions, Inc., d/b/a All Good Festival, is a Maryland corporation with its principal place of business in Maryland and is a producer, organizer, and promoter of the All Good Music Festival in Preston County, West Virginia.

3.    Defendant All Good Festival, Inc., is a Maryland corporation with its principal place of business in Maryland and

is a producer, organizer, and promoter of the All Good Music Festival in Preston County, West Virginia.

4.   Defendant Tim Walther is a citizen and resident of Maryland and is a producer, organizer, and promoter of the All Good Music Festival in Preston County, West Virginia.  At times relevant hereto, Mr. Walther was the president, controlling person, and owner of Walther Productions, Inc., and All Good Festival, Inc.

5.   Defendant Junipa Contento is a citizen and resident of Maryland and is a producer, organizer, and promoter of the All Good Music Festival in Preston County, West Virginia.  At times relevant hereto, Ms. Contento was an officer, controlling person, and owner of Walther Productions, Inc., and All Good Festival, Inc.  Defendants Walther Productions, Inc., All Good Festival, Inc., Tim Walther, and Junipa Contento are collectively referred to as the "All Good Defendants."

6.   The corporate veil between Defendants Walther and Contento and the entities Walther Productions, Inc., and All Good Festival, Inc., should be pierced and Walther and Contento declared the alter egos of the those entities in that there is such a unity of interest and ownership that the separate personalities of the corporations and of the individual shareholders no longer exist, and an inequitable result would occur if the acts alleged herein are treated as those of the

3

corporations alone.  As a result, Walther and Contento are jointly and severally responsible and liable for the acts of Walther Productions, Inc. and All Good Festival, Inc., as alleged herein.

7.    Defendants Walther and Contento should be held personally liable for the negligence and damages alleged herein on the following additional grounds:

a.    they represented and held themselves out as financial backers of the 2011 All Good Festival;

b.    they directed, sanctioned, and participated in the wrongful acts alleged herein, including violation of the local ordinance;

c.    the corporations Walther Productions, Inc., and All Good Festival, Inc., are so organized and controlled as to be a mere adjunct or instrumentality of Defendants Walther and Contento.

8.    Defendant James Tobin is a citizen and resident of California.  Defendant Jim Tobin Productions is an unincorporated association based in California and owned by James Tobin.  James Tobin and Jim Tobin Productions are collectively referred to herein as "Tobin."  Tobin was retained by the All Good Defendants to act as the Site Operations Manager at the 2011 All Good Music Festival in Preston County, West Virginia.

4

9.   Defendant Marvin Huggins, d/b/a Marvin's Mountaintop, is a citizen and resident of West Virginia and an owner of the real property in Preston County, West Virginia, where the All Good Music Festival is held.  Huggins leased the premises for the 2011 All Good Music Festival to the All Good Defendants.

10.   Defendant M & M Parking, Inc., a/k/a M & M Parking Services, Inc., a/k/a M & M Event Services, LLC ("M & M Parking"), is a Pennsylvania corporation with its principal place of business in Pennsylvania and contracted with the All Good Defendants to provide parking services at the 2011 All Good Music Festival in Preston County, West Virginia.

11.   Defendant Event Staffing, Inc., is a Virginia corporation with its principal place of business in Virginia and contracted with the All Good Defendants to provide security at the 2011 All Good Music Festival in Preston County, West Virginia.

12.   Defendant National Event Services, Inc., is a New Hampshire corporation with its principal place of business in Pennsylvania and contracted with the All Good Defendants to provide security at the 2011 All Good Music Festival in Preston County, West Virginia.

13.   Defendant Axis Security, Inc., is a Tennessee corporation with its principal place of business in Pennsylvania and contracted with the All Good Defendants to provide security

at the 2011 All Good Music Festival in Preston County, West Virginia.  Defendants Event Staffing, Inc., National Event Services, Inc., and Axis Security, Inc., are collectively referred to as the "Security Defendants."

14.  The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants acted at all times relevant under an agency relationship by which those Defendants retained and exercised control over the conduct and activities of the other Defendants.  Each of the above Defendants acted within that agency relationship with the knowledge, permission, authority, consent and/or ratification of each other above Defendant.  As a result, each of the above Defendants is jointly and severally responsible and liable for the acts of each other above Defendant as alleged herein.

15.  The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants acted at all times relevant as a joint venture in that they were associated to carry out a single business enterprise for a shared profit, namely the 2011 All Good Music Festival, for which purpose they combined their property, money, effects, skill, and knowledge by way of contract.  Each of the above Defendants acted within that joint venture with the knowledge, permission, authority, consent and/or ratification of each other above Defendant.  As a result, each of the above Defendants is jointly and severally

responsible and liable for the acts of each other above Defendant as alleged herein.

16.   At all times relevant, a master-servant relationship existed for purposes of the doctrine of *respondeat superior* between the All Good Defendants and Defendants Tobin, M & M Parking, and the Security Defendants in that the All Good Defendants exercised the power of control over the means and method of performing the work undertaken by Tobin, M & M Parking, and the Security Defendants with regard to the actions alleged herein.  The All Good Defendants and Defendants Tobin, M & M Parking, and the Security Defendants acted within that master-servant relationship with the knowledge, permission, authority, consent and/or ratification of each other.  As a result, the All Good Defendants are vicariously liable for the acts and harm caused by Defendants Tobin, M & M Parking, and the Security Defendants.

17.   To the extent that the All Good Defendants and Defendants Tobin, M & M Parking, and the Security Defendants maintained an independent contractor relationship, which is specifically denied, the All Good Defendants are still vicariously liable for the acts and harm caused by Defendants Tobin, M & M Parking, and the Security Defendants because:

a.   the All Good Defendants held the 2011 All Good Music Festival and Marvin's Mountaintop open to the public and failed

7

to exercise reasonable care to protect attendees of the
Festival, including Plaintiff, from unreasonably dangerous
conditions created by the other Defendants or to exercise
reasonable care with regard to the placement of vehicles, tents,
and other parking and security actions undertaken by Defendants
Tobin, M & M Parking, and the Security Defendants;

   b.   Defendants Tobin, M & M Parking, and the Security
Defendants acted at all relevant times pursuant to orders or
directions negligently and/or intentionally given by the All
Good Defendants such that the acts or omissions of Defendants
Tobin, M & M Parking, and the Security Defendants were
effectively that of the All Good Defendants;

   c.   the All Good Defendants knew that Defendants Tobin, M
& M Parking, and the Security Defendants were engaged in work
that was intrinsically dangerous in character and was likely to
cause injury to All Good Music Festival attendees if proper care
was not taken, and the All Good Defendants did not see that
necessary precautions were taken to prevent injury;

   d.   the All Good Defendants and Defendants Tobin, M & M
Parking, and the Security Defendants were knowingly engaged in
illegal work in that they did not comply with

      i.   West Virginia Code § 64-18-17, regulating
      campsite density and roadways, in that they failed to
      maintain campsites that were adequately sized, adequately

8

spaced, or adequately distanced from campground streets, common parking areas, or other common use areas;

    ii.  the permit granted for the 2011 All Good Music Festival in that they did not limit attendees to 19,500 and did not submit a plan for traffic control at the Festival site; and

    iii. did not otherwise comply with local, state, and federal laws and regulations;

    e.  the All Good Defendants failed to inspect the work performed by Defendants Tobin, M & M Parking, and the Security Defendants to ascertain that it was done in a reasonably safe manner; and,

    f.  in such other particulars as discovery may reveal.

    18.  Defendant Huggins, as the owner of the property on which the 2011 All Good Music Festival took place, is liable for the acts, negligence, and harm caused by the All Good Defendants and their agents, servants, and contractors, including Defendants Tobin, M & M Parking, and the Security Defendants, because:

    a.  Defendant Huggins held Marvin's Mountaintop open to the public and failed to exercise reasonable care to protect attendees of the Festival, including Plaintiff, from unreasonably dangerous conditions created by the other Defendants;

9

b.   Defendant Huggins knew that the All Good Defendants were engaged in work that was intrinsically dangerous in character and was likely to cause injury to All Good Music Festival attendees if proper care was not taken, and Defendant Huggins did not see that necessary precautions were taken to prevent injury;

c.   Defendant Huggins was knowingly engaged in illegal work in that he did not comply with

i.   West Virginia Code § 64-18-17, regulating campsite density and roadways, in that they failed to maintain campsites that were adequately sized, adequately spaced, or adequately distanced from campground streets, common parking areas, or other common use areas;

ii.  the permit granted for the 2011 All Good Music Festival in that he did not limit attendees to 19,500 and did not submit a plan for traffic control at the Festival site;

iii. did not otherwise comply with local, state, and federal laws and regulations; and

d.   in such other particulars as discovery may reveal.

19.  Defendant Clay Harlin Lewin is a citizen and resident of the State of Virginia and was an attendee of the 2011 All Good Music Festival in Preston County, West Virginia.

## JURISDICTION AND VENUE

20.   This Court has personal jurisdiction over all Defendants.

21.   The amount in controversy exceeds $75,000.

22.   This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a)(1).

23.   This Court is the proper venue for this action under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

24.   The All Good Music Festival is a for-profit music festival and camp out held at "Marvin's Mountaintop" campground located in Preston County, West Virginia, since 2003.

25.   The All Good Defendants have produced, operated, and promoted the All Good Music Festival since its inception.  The All Good Defendants sell tickets to the public for these events.

26.   Defendant Marvin Huggins owns "Marvin's Mountaintop," the campground where the All Good Music Festival has been held. Defendant Huggins leased Marvin's Mountaintop to the All Good Defendants to hold the 2011 All Good Music Festival.

27.   In 2011, the All Good Defendants and Defendant Huggins hosted the All Good Music Festival from July 14 to 17.

11

28.   The All Good Defendants contracted with Defendant Tobin to act as the Site Operations Manager for the 2011 All Good Music Festival.

29.   The All Good Defendants contracted with Defendant M & M Parking to provide parking services for the 2011 All Good Music Festival.

30.   The All Good Defendants contracted with Defendants Event Staffing, Inc., National Event Services, Inc., and Axis Security, Inc. (collectively referred to as the "Security Defendants"), to provide security for the 2011 All Good Music Festival.   The Security Defendants were also retained by the All Good Defendants to ensure the safety of attendees throughout the Festival site, including safety with regard to camping and parking for festival attendees.

31.   In their application for a Mass Gathering Permit submitted to Preston County, West Virginia, for the 2011 All Good Music Festival, the All Good Defendants represented that a maximum of 19,500 attendees would be at the event and also failed to provide a plan for traffic control at the Festival in violation of the Preston County Mass Gathering Ordinance.

32.   The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants failed to comply with West Virginia Code § 64-18-17, regulating campsite density and roadways, in that they failed to maintain campsites that were

adequately sized, adequately spaced, or adequately distanced from campground streets, common parking areas, or other common use areas.

33. The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants had complete control over where and how attendees parked at the 2011 All Good Music Festival. Attendees were told precisely where to park by employees, agents, representatives, and volunteers hired, retained, and/or supervised by the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants.

34. The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants failed to formulate any sort of traffic, parking, or camping plan with regard to the Festival site itself, failed to designate campsites, roads, rights-of-way, parking areas, or common use areas, and failed to insure that attendees' tents were sufficiently separated from the existing and intended roads and rights-of-way.

35. Prior to July 17, 2011, the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants were all aware of, or should have been aware of, the hazards presented by having attendees park their vehicles in close proximity to tents on steep, grass-covered slopes and rugged terrain at the All Good Music Festival. The All Good

Music Festival website at http://www.allgoodfestival.com/ specifically contained the following statements regarding parking:

a.    "Due to the rugged terrain vehicles and tent camping will be separate. In some cases, vehicles cannot be directly next to tents, but will be as near as possible. All cars will be parked in designated areas. Please plan ahead for carrying your gear from the parking area to your camp site. Day parking is available too."

b.    "**SAFETY FIRST**. Cars and tents are camped separate. Plan to carry your gear to your selected site. Walking distance can vary. Plan on a hike of about 100-400 yards. Assistance can be offered for those with special needs or disabilities."

c.    "However, **no tents** can be pitched in the parking lots. The parking section is for passenger vehicles only. Tents and cars are parked separately. There are hills and cars cannot safely park with tents in a crowd. Unless you have special needs due to disabilities, there are no exceptions."

d.    "Vehicles and tent camping are separate in most places, please gear up for walking between 100-400 yards from vehicle to camp site."

14

36.   Despite their knowledge of the hazards presented by parking attendees' vehicles in close proximity to tents on steep, grass-covered slopes and rugged terrain, at the 2011 All Good Music Festival the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants directed attendees to park their vehicles next to and above tents on steep, grass-covered slopes and rugged terrain.

37.   Prior to July 17, 2011, in the course of directing attendees to park at the 2011 All Good Music Festival and at prior Festivals, the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants were aware, or should have been aware, that attendees' vehicles were not maintaining traction on the steep, grass-covered slopes and rugged terrain, especially when the grass was wet.

38.   Prior to July 17, 2011, at the 2011 All Good Music Festival and at prior Festivals, the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants were aware, or should have been aware, that attendees had lost control of their vehicles on the steep, grass-covered slopes, especially when wet, and rugged terrain and crashed into other vehicles and into tents greatly endangering the physical safety and lives of attendees.

39.   Nicole and Defendant Lewin purchased tickets from the All Good Defendants and were attendees of the 2011 All Good Music Festival.

40.   The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants hired, retained, and/or supervised untrained and unpaid volunteers to direct attendees where to park at the 2011 All Good Music Festival and provided those volunteers with no instructions or warnings regarding the hazards of parking vehicles and tents in close proximity on the steep, grass-covered slopes at the site.

41.   When Nicole and her friends, Yen Ton and Rosie Doran, arrived at the 2011 All Good Music Festival, employees, agents, representatives, and volunteers hired, retained, and/or supervised by the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants directed them to set up their tent at the bottom of a steep, grass-covered hill.

42.   When Defendant Lewin arrived at the 2011 All Good Music Festival, employees, agents, representatives, and volunteers hired, retained, and/or supervised by the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants directed him to park his vehicle at the top of the steep, grass-covered hill directly above the camp site that had been assigned to Nicole and her friends.

16

43.   The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants failed to maintain a clear path between where they instructed Defendant Lewin to park and the road or even the demarcated right-of-way intended for vehicles to access the road.   Rather, the Defendants allowed numerous tents to be placed between Defendant Lewin's vehicle and the right-of-way, leaving no safe egress for Defendant Lewin.

44.   At the 2011 All Good Music Festival, employees, agents, representatives, and volunteers hired, retained, and/or supervised by the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants directed literally dozens of people to park their vehicles and place their tents in close proximity to each other on the steep, grass-covered slope that was occupied by Nicole and her friends and Defendant Lewin.

45.   At the 2011 All Good Music Festival, employees, agents, representatives, and volunteers hired, retained, and/or supervised by the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants made no effort to designate camping areas, campsites, campground streets, or parking areas or to insure that there was adequate space within and between campsites, and insure that there was adequate space between campsites and campground streets, common parking areas,

or other common use areas or to comply with density requirements in the area were Defendant Lewin was parked and Nicole was camping.

46.   At one point, employees, agents, representatives, and volunteers hired, retained, and/or supervised by the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants directed attendees to drive their vehicles up the steep, grass-covered slope above the camp site assigned to Nicole and her friends and to continue driving until they lost traction on the slope and then park at the spot that they could no longer maintain traction.

47.   Upon information and belief, the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants sold far in excess of 19,500 tickets and allowed more than 19,500 attendees to attend the 2011 All Good Music Festival, necessitating that vehicles and tents of attendees be placed in close proximity to each other on steep, grass-covered slopes and rugged terrain despite their knowledge that such actions were highly dangerous.

48.   On the morning of July 17, 2011, Defendant Lewin prepared to leave the 2011 All Good Music Festival.  This was the last day of the Festival, and it was foreseeable that many attendees would be leaving that morning while other attendees were still sleeping in nearby tents.

49. The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants undertook no actions to insure that Festival attendees could depart the Festival in a safe manner or otherwise guide or control efforts to leave the site in a safe manner or gain access to a right of way safely.

50. Defendant Lewin was attempting to maneuver his vehicle between the numerous tents and other vehicles in close proximity to him in order to get off the steep, grass-covered slope that was now wet with dew and gain access to a right of way and road.

51. While attempting to get off the slope the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants had directed him to, Defendant Lewin's vehicle lost traction on the wet grass, causing Defendant Lewin to lose control of his vehicle. The vehicle began to slide down the steep hill toward the vehicles and tents placed below Defendant Lewin by the other Defendants.

52. While his vehicle was sliding down the slope and not under this control, Defendant Lewin's vehicle careened into two other vehicles and then into an unoccupied tent near Nicole's tent. Defendant Lewin's vehicle then crashed with great force into Nicole's tent, which was occupied by Nicole, Yen Ton, and Rosie Doran, all of whom were asleep at the time.

53. Defendant Lewin's vehicle came to rest on top of Nicole while she was trapped in the tent with her two friends.

54.  Because Defendant Lewin's vehicle was on top of Nicole's chest, Nicole could not breathe.  Although she was initially conscious, Nicole slowly and painfully asphyxiated due to compression from the vehicle and eventually died due to the injuries she received before Defendants removed Defendant Lewin's vehicle.

55.  The collision and Nicole's injuries and death were entirely foreseeable and caused by the Defendants' negligent, reckless, and willful conduct in directing Defendant Lewin and others to park their vehicles on a steep, grass-covered slope directly uphill of Nicole's tent, a situation that the Defendants knew was highly dangerous.

**COUNT ONE**
**AGAINST DEFENDANTS WALTHER PRODUCTIONS, INC.,
ALL GOOD FESTIVAL, INC., TIM WALTHER, JUNIPA CONTENTO,
MARVIN HUGGINS, JAMES TOBIN, JIM TOBIN PRODUCTIONS,
M & M PARKING SERVICES, INC., EVENT STAFFING, INC.,
NATIONAL EVENT SERVICES, INC., AND AXIS SECURITY, INC.**
*(Negligence and Negligence Per Se)*

56.  The allegations stated in Paragraphs 1 through 55 above are repeated and realleged as if fully set forth verbatim herein.

57.  The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants all owed a non-delegable duty of due care to all Festival attendees, including Nicole, to:

20

a.   exercise ordinary care to keep and maintain the premises at the 2011 All Good Music Festival in a reasonably safe condition;

b.   hire, retain, train, and supervise qualified persons to provide security at the Festival, including directing attendees to reasonably safe campsites and parking;

c.   design, formulate, and implement a plan to provide for reasonably safe campsites, traffic control, and parking for attendees;

d.   warn attendees of any unreasonably dangerous conditions at the Festival;

e.   protect attendees from injuries inflicted by other attendees.

f.   provide adequate security for the reasonable protection of those lawfully upon the premises;

g.   inspect and supervise the premises so as to prevent unreasonably dangerous conditions from occurring and to appropriately respond when dangers do arise;

h.   comply with all permitting requirements and local, state, and federal laws and regulations;

i.   control the density of the campsites and their proximity to campground streets and parking areas; and,

j.    exercise reasonable care to control the conduct of the other Defendants and attendees so as to prevent them from creating an unreasonable risk of bodily harm to attendees.

58.   The All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants negligently, carelessly, willfully, wantonly and recklessly failed to perform and breached each of the foregoing duties owed to Nicole, including in the following particulars:

a.    failing to exercise reasonable care in directing the placement of tents and cars at the 2011 All Good Music Festival;

b.    failing to keep the premises at the 2011 All Good Music Festival in a reasonably safe condition:

c.    instructing Festival attendees, including Plaintiff, to pitch their tent at the bottom of a steep, grass-covered slope and on rugged terrain in close proximity to, and downhill to, other attendees' vehicles, including the vehicle of Defendant Lewin;

d.    failing to provide attendees with a reasonably safe area to camp or a reasonably safe area to park their vehicles;

e.    failing to develop and follow a reasonably safe plan for accommodating attendees, their tents, and their vehicles;

f.    failing to properly hire, retain, train and supervise their agents, servants, employees, and volunteers, including the

other Defendants, with regard to security, including the placement of attendee's tents and vehicles;

g.   failing to protect attendees from dangerous conditions that they knew about or reasonably should have known about;

h.   failing to limit the number of attendees in accordance with its permit, or otherwise comply with permitting requirements and local, state, and federal law and regulations, so that unsafe camping and parking conditions could be avoided;

i.   failing to prepare a plan for traffic control within the Festival in violation of the Preston County Mass Gathering Ordinance;

j.   failing to comply with West Virginia Code § 64-18-17, regulating campsite density and roadways, in that they failed to maintain campsites that were adequately sized, adequately spaced, or adequately distanced from campground streets, common parking areas, or other common use areas;

k.   failing to insure that Festival attendees had a reasonably safe means of egress from the Festival;

l.   failing to maintain appropriate roadways and rights-of-way for vehicles that did not endanger other attendees;

m.   failing to address the hazardous nature of their camping and parking arrangements after attendees had lost control of their vehicles due to the steep slopes and rugged

23

terrain and crashed into other vehicles and tents at the 2011
and prior Festivals;

    n.   failing to warn attendees of the hazards created by
parking tents and vehicles in close proximity to each other on
steep slopes and rugged terrain;

    o.   failing to protect attendees from injuries inflicted
by other attendees;

    p.   failing to supervise or instruct attendees as to how
to safely leave the premises; and,

    q.   in such other particulars as discovery may reveal.

    59.  Given the breach of duties by the All Good Defendants,
Defendants Huggins, Tobin, M & M Parking, and the Security
Defendants, the collision described above and Nicole's resulting
injuries and death were entirely foreseeable, and the All Good
Defendants, Defendants Huggins, Tobin, and M & M Parking, and
the Security Defendants, should have anticipated the collision
based on what they knew or should have known.

    60.  Nicole was acting in a reasonably prudent and careful
manner at all times pertinent hereto.

    61.  The willful, wanton, reckless, grossly negligent, and
negligent acts and omissions of the All Good Defendants,
Defendants Huggins, Tobin, M & M Parking, and the Security
Defendants directly, proximately, factually, and legally caused

the collision described above, and Nicole's resulting grievous injuries, pain and suffering, and death.

62.   As a direct and proximate result of the willful, wanton, reckless, grossly negligent, and negligent acts set out above by the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants, Nicole's beneficiaries, as represented by Plaintiff Kim Miller, have suffered injuries, which have caused, and in the future will cause, her beneficiaries to suffer one or more of the following elements of damage as to the wrongful death claim:

a.   Sorrow, mental anguish, and solace;

b.   Society, companionship, comfort, guidance, kindly offices and advice of the decedent;

c.   compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent;

d.   expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and,

e.   reasonable funeral expenses.

63.   In addition, as a direct and proximate result of the willful, wanton, reckless, grossly negligent, and negligent acts set out above by the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants, Nicole suffered injuries which caused her to suffer one or more of the

following elements of damage also recoverable in this wrongful death claim:

    a.    physical pain and suffering;

    b.    mental anguish;

    c.    emotional distress; and,

    d.    shock and injury to Nicole's nerves and nervous system.

64.    Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the All Good Defendants, Defendants Huggins, Tobin, M & M Parking, and the Security Defendants as set out above, as well as their violation of their permit and local, state and federal law, Plaintiff Kim Miller is entitled to recover actual and punitive damages against them, jointly and severally, as determined by a jury.

### COUNT TWO
### AGAINST DEFENDANT LEWIN
#### (Negligence)

65.    The allegations stated in Paragraphs 1 through 64 above are repeated and realleged as if fully set forth verbatim herein.

66.    Defendant Lewin owed a duty of due care in operating his vehicle on July 17, 2011 as he was attempting to leave the 2011 All Good Festival.

67.    Defendant Lewin negligently, carelessly, willfully, wantonly and recklessly failed to perform and breached his duty of due care owed to Nicole in the following particulars:

a.    failing to maintain control of his vehicle;

b.    attempting to leave the Festival when he knew, or should have known, that operating the vehicle would create an unreasonably dangerous risk of great bodily harm to those attendees in his vicinity;

c.    parking his vehicle at the top of a steep, grass-covered slope on rugged terrain in close proximity to, and uphill of, other attendees' tents, including the tent occupied by Nicole;

d.    failing to warn other attendees, including Nicole, that he was attempting to leave the vicinity; and,

e.    in such other particulars as discovery may reveal.

68.    Given Defendant Lewin's breach of his duties, the collision described above and Nicole's resulting injuries and death were entirely foreseeable, and Defendant Lewin should have anticipated the collision based on what he knew or should have known.

69.    Nicole was acting in a reasonably prudent and careful manner at all times pertinent hereto.

70.    The willful, wanton, reckless, grossly negligent, and negligent acts and omissions of Defendant Lewin directly,

27

proximately, factually, and legally caused the collision
described above and Nicole's resulting grievous injuries, pain
and suffering, and death.

71.   As a direct and proximate result of Defendant Lewin's
willful, wanton, reckless, grossly negligent, and negligent acts
as set out above, Nicole's beneficiaries, as represented by
Plaintiff Kim Miller, have suffered injuries which have caused,
and in the future will cause, her beneficiaries to suffer one or
more of the following elements of damage as to the wrongful
death claim:

a.   Sorrow, mental anguish, and solace;

b.   Society, companionship, comfort, guidance, kindly
offices and advice of the decedent;

c.   compensation for reasonably expected loss of (i)
income of the decedent, and (ii) services, protection, care and
assistance provided by the decedent;

d.   expenses for the care, treatment and hospitalization
of the decedent incident to the injury resulting in death; and,

e.   reasonable funeral expenses.

72.   In addition, as a direct and proximate result of
Defendant Lewin's willful, wanton, reckless, grossly negligent,
and negligent acts as set out above, Nicole suffered injuries,
which caused her to suffer one or more of the following elements
of damage also recoverable in this wrongful death claim:

a.   physical pain and suffering;

b.   mental anguish;

c.   emotional distress; and,

d.   shock and injury to Nicole's nerves and nervous system.

73.   Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Defendant Lewin, as set out above, Plaintiff Kim Miller is entitled to recover actual and punitive damages against him, jointly and severally, as determined by a jury.

WHEREFORE, Plaintiff prays for a trial by jury and for the following:

i.   Judgment against all Defendants for actual and punitive damages, jointly and severally, in an amount to be determined by the jury;

ii.   For the costs of this action; and

iii.   For such other and further relief as this court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

KIM S. MILLER, individually and as Personal Representative of the Estate of NICOLE FARIS MILLER, PLAINTIFF, BY COUNSEL.

29

_/s_____

J. Michael Benninger, Esquire
W.Va. State Bar No. 312
Benninger Law
PROFESSIONAL LIMITED LIABILITY COMPANY
P.O. Box 623
Morgantown, WV  26507
(304) 252-1856
mike@benningerlaw.com

**Pierce, Herns, Sloan & Wilson, LLC**
Carl E. Pierce, II
Joseph C. Wilson, IV
William P. Early
The Blake House
321 East Bay Street
Post Office Box 22437
Charleston, South Carolina 29413
843-722-7733
*Counsel for Plaintiff*